IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS BURCH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00674-AGF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Thomas Burch's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On December 23, 2014, Petitioner entered a plea of guilty to three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The Court accepted Petitioner's plea, and on May 5, 2015, sentenced Petitioner to 66 months in prison on each count, to run concurrently.

In his pro se motion under § 2255, Petitioner claims that trial counsel was ineffective for: (1) failing to address Petitioner's post-traumatic stress disorder ("PTSD") as a mitigating factor during sentencing; (2) failing to secure an expert witness on PTSD and how it could have related to Petitioner's actions; (3) promising Petitioner that he would receive no more than "a year and a day in a camp" if he pled guilty; (4) failing to challenge the indictment on statute-of-limitations grounds; (5) attempting to downplay the seriousness of the offense; (6) persuading Petitioner to plead guilty instead of

proceeding to trial; (7) failing to mention Petitioner's wife's and mother-in-law's physical and mental health during his sentencing; (8) failing to explain to Petitioner that "knowledge of distribution is required under new guidelines"; and (9) failing to investigate a potential Fourth Amendment violation regarding Petitioner's consent to search his residence and computers. As the record before the Court conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without a hearing.

## BACKGROUND

**Criminal Proceedings**

As part of the guilty plea agreement signed by both parties, Petitioner stipulated to the following facts. Between February 9, 2012 and March 29, 2012, Sergeant Bob Muffler of the St. Louis City Police Department was conducting an authorized online undercover operation of individuals offering or possessing images of child pornography on a peer-to-peer network. During his investigation, Sergeant Muffler located an IP address offering to share videos which contained "SHA values" that matched known child pornography. This IP address was recorded and ultimately led detectives to a computer located in a desk area of a St. Louis office of Wells Fargo Mortgage. The desk area belonged to Petitioner, who was an employee of the company.

On April 6, 2012, detectives questioned Petitioner outside his residence after Petitioner was advised of and waived his *Miranda*[1] rights. One of the detectives then

---

[1]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

asked Petitioner for consent to seize and search two hard drives in his residence that Petitioner admitted contained mass internet downloads of pornography, including possibly child pornography, downloaded via the router at his work. Petitioner explained to the detective that he downloaded child pornography because he was curious about the contents. In response to the detective's request for consent to the search, Petitioner requested an attorney. The detective thus stopped questioning Petitioner and relayed this information to a sergeant, who then approached Petitioner and advised Petitioner that he (the sergeant) would be requesting a judge to review a search warrant for the residence.

Petitioner asked if there was an alternative to a search warrant, and the sergeant informed him of the procedure: either give the officers consent or they would attempt to get a search warrant. Petitioner then asked to speak to his wife privately. Following the conversation with his wife, Petitioner gave verbal consent to the sergeant to conduct the search. The sergeant then asked Petitioner if Petitioner was waiving his rights to an attorney and wanted to continue cooperating, to which Petitioner responded, "yes." Petitioner then signed a written *Miranda* waiver and a consent form giving officers consent to search the residence for computer media. He also signed a consent to search media form which gave officers the authority to search the contents of digital media.[2]

---

[2] Following the removal of the items from the residence, Petitioner's attorney contacted the sergeant on April 24, 2012 and withdrew Petitioner's consent to search the equipment. On July 12, 2012, the detective applied for and was granted a valid search warrant to search all of the seized media. *United States v. Burch*, No. 4:14-cr-00263-AGF, ECF No. 32 (E.D. Mo.).

3

Forensic analysis of the media seized revealed that the media contained videos and images of pre-pubescent minor children engaged in sexually explicit conduct, and some portrayed sadistic or masochistic conduct or other depictions of violence. *See generally*, *United States v. Burch*, No. 4:14-cr-00263-AGF, ECF No. 32 (E.D. Mo.).

On August 27, 2014, Petitioner was indicted on three counts of Possession of Child Pornography, in violation of 18 U.S.C. § 2254A(a)(5)(B). On October 14, 2014, Petitioner filed his waiver of pretrial motions. *Id.*, ECF no. 21. On October 22, 2014, the Court conducted a waiver hearing with Petitioner and his counsel. The Court asked Petitioner about his understanding of his right to file pretrial motions and to hold a hearing on pretrial motions. *Id.*, ECF No. 24. Petitioner acknowledged that he understood his rights and that it was his intention to waive his right to file pretrial motions and to hold a hearing on pretrial motions. *Id.* The Court accepted his waiver and knowingly and voluntarily made. *Id.*

**Plea Agreement and Hearing**

As indicated above, on December 23, 2014, Petitioner pled guilty to all counts in the indictment. The plea agreement contained the following provision:

> **5. STATUTORY PENALTIES:**
> As to Counts One, Two, and Three, the defendant fully understands that the maximum possible penalty provided by law for the crime of Possession of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than life and not less than five years.

*Id.*, ECF No. 32.

At the change-of-plea hearing, the Court discussed with Petitioner the psychiatric treatment that Petitioner was receiving for his anxiety, depression, and PTSD, but Petitioner indicated that there was nothing about his physical or mental conditions, or his medications, that would make it difficult for him to think clearly or understand what was happening. *Id.*, ECF No. 58 at 5-7. The Court asked whether Petitioner had enough time to review the plea agreement with his attorney, to which Petitioner answered in the affirmative. *Id.* at 8. Petitioner represented to the Court that he had read, discussed with his attorney, and understood the terms of the indictment and plea agreement; that he understood the rights he was giving up by pleading guilty, including all of his rights associated with his right to a trial; and that he was guilty of the crime to which he was pleading guilty. He further confirmed that he was satisfied with the representation he received from his attorney, and that there was nothing he wanted his attorney to do for him that the attorney had not done in representing Petitioner. *Id.* at 8-14.

Petitioner also represented that he understood that he would normally have the right to contest both his conviction and his sentence in an appeal or post-conviction proceeding, but that in the plea agreement, he was waiving his right to appeal all non-jurisdictional, non-sentencing issues, including any issues related to pretrial motions, discovery and even this very guilty plea. With respect to pretrial motions in particular, Petitioner represented as follows:

> THE COURT: Now, let's step back and make sure that you understand what's involved here, Now, based upon my review of the plea agreement here, sir, it appears that quite a few items in which you claim an interest were seized, both at your place of employment and in your home; is that correct?

> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And it also appears that you made certain statements to law enforcement officers?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand, sir, that in connection with these court proceedings if you believe that any of those items were seized in violation of your rights, or that statements made by you were not voluntary or were made in violation of your rights, you would have the right to file a motion to suppress those statements; you understand that, sir?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And had you filed any such motions, the magistrate judge would have held a hearing on those motions and issued a ruling on them, and if you disagreed with the magistrate judge's rulings you could object, and then I would make a de novo determination; do you understand, sir?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So you understand that among the things that you are giving up your rights to appeal is your right to appeal, right to claim that any of those items were seized in violation of your rights?
>
> THE DEFENDANT: Yes, ma'am.

*Id.* at 15-16.

Petitioner further represented that he understood he was waiving his right to appeal all sentencing issues other than the calculation of his criminal history; and his right to contest his conviction or sentence in a post-conviction proceeding except for claims of prosecutorial misconduct and ineffective assistance of counsel. *Id.* at 15-17.

With respect to sentencing, Petitioner represented as follows:

> THE COURT: And can you tell me, sir, has anyone made a promise to you as to a particular sentence you should expect to receive in this case?
>
> THE DEFENDANT: No.

6

> THE COURT: Because I need to make it very clear to you today, that if anybody has made such a promise to you, that's a promise they can't keep, because they can't know, because I won't know until your sentencing where I believe you fall in the Sentencing Guidelines chart or whether I'm going to impose a guideline or a nonguideline sentence, you understand? Because right now I don't know enough about you to tell you what I might do at sentencing. I always have to wait until I have reviewed that presentence report and everything else that the parties present to me before I can know what I might do at sentencing; do you understand?
>
> THE DEFENDANT: Yes, ma'am.

*Id.* at 22-23. Finally, the Court asked Petitioner whether, other than what was contained in the plea agreement, anyone had "made any promises," or "offered [Petitioner] anything or given [Petitioner] anything," to get Petitioner to plead guilty, or "threatened [Petitioner] or tried to force [Petitioner to plead guilty?" *Id.* at 29-30. Petitioner responded "no" to each of these questions. *Id.*

The Court ascertained the factual basis for the guilty plea and found that the plea was knowing, intelligent, and voluntary. *Id.* at 40-41.

**<u>Sentencing Proceedings</u>**

On April 25, 2015, counsel for Petitioner filed a sentencing memorandum requesting a downward sentencing departure based on Petitioner's mental and emotional conditions, including the abuse he suffered at the hands of his father, as well as his family ties and responsibilities. The memorandum also stated that Petitioner's wife was extremely dependent on Petitioner for her care and was unable to function and live independently without him. In the memorandum, counsel "beg[ged] this honorable court to consider [Petitioner's] family ties and responsibilities . . . and grant him an appropriate sentencing variance." *Id.*, ECF No. 42.

On April 28, 2015, the United States Probation Office prepared a final Presentence Investigation Report ("PSR"), which reported that Petitioner was being treated at the Veteran's Administration ("VA") Hospital for the past seven years and that he was seeing a psychiatrist monthly. *Id.* ECF No. 45, at 12.

The Court held a sentencing hearing on May 5, 2015. Under the United States Sentencing Guidelines ("Guidelines"), Petitioner's final sentencing range was 78 to 97 months' imprisonment. This range included an increase in offense level because the materials involved prepubescent minors; the materials involved sadistic or masochistic materials or depictions of violence; the materials involved the use of a computer; and the offense involved more than 600 images. This range also included a reduction in offense level based upon Petitioner's acceptance of responsibility and timely notifying the government of his intent to enter into a plea. *Id.*, ECF No. 59 at 5-6. At the sentencing hearing, Petitioner's counsel again raised the abuse Petitioner suffered by his father and the psychological effects that abuse might have had on Petitioner. He also highlighted Petitioner's role as his wife's caregiver, stating that Petitioner's wife "relies heavily on [Petitioner]" and was not in good psychological health. *Id.* at 11. Petitioner also personally addressed the Court, stating that he knew he was guilty and he did not have an excuse, but that he was receiving treatment from the VA and that he "suffer[red] from PTSD from an incident in Vietnam" that he could not talk about. *Id.* at 15-16.

The Court sentenced Petitioner to 66 months' imprisonment with a period of 15 years of supervised release. The Court granted a downward departure and a variance "based upon PTSD and other psychological damage as a result of physical and sexual

abuse suffered as a child." *Id.* at 21. The Court also stated that that it had reviewed a letter and report from a treating psychiatrist with respect to Petitioner's wife, and that it had "taken into account the fact that [Petitioner's] wife suffers from various physical and mental health problems, and that he has been an important and necessary support for her." *Id.* at 8, 22.

**Motion to Vacate**

On May 5, 2015, Petitioner filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. As noted above, Petitioner asserts that trial counsel was ineffective for various failures throughout the plea and sentencing proceedings. ECF No. 1. The government responds that none of Petitioner's claims has merit.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. A petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

"To establish ineffective assistance during plea negotiations, the petitioner must show 'counsel's representation fell below an objective standard of reasonableness' and 'that such deficient performance prejudiced' the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688

9

(1984)). Prejudice in this context requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez v. United States*, No. 929 F.3d 1041, 1045 (8th Cir. 2019) (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)). "Instead, judges should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted).

**Claims 1 and 2: Failures related to Petitioner's PTSD**

Petitioner's first claim, that counsel was ineffective for failing to address Petitioner's PTSD as a mitigating factor at sentencing, is clearly refuted by the record. Petitioner's counsel and Petitioner himself pleaded with the Court to consider Petitioner's mental and emotional conditions and recounted at the sentencing hearing the abuse suffered by Petitioner during his childhood and his service in Vietnam. Further, as noted above, the Court did in fact grant a downward departure and variance based upon Petitioner's PTSD and other psychological damage.

Similarly, Petitioner's second claim, that counsel should have retained an expert to testify about the effects of PTSD on Petitioner's behavior, is meritless. The Court explicitly considered Petitioner's PTSD and other mental health factors, and it understood

the impact of those factors, thus providing grounds for granting Petitioner's request for a downward departure. Petitioner has not presented any argument or evidence that, had an expert testified, the outcome would have been different, so as to demonstrate prejudice under *Strickland*. Accordingly, the Court will deny Petitioner's Claims 1 and 2.

**Claims 3, 5, and 6: Representations Made by Counsel**

Petitioner contends that counsel was ineffective for promising Petitioner that he would receive "a year and a day in camp" if he pled guilty (Claim 3); downplaying the seriousness of the offense (Claim 5); and persuading Petitioner to plead guilty rather than going to trial (Claim 6). The record plainly contradicts each of these claims. *See Adams*, 869 F.3d at 635 ("A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings") (citation omitted).

Petitioner confirmed on several instances before pleading guilty that no one promised him anything or tried to force him to plead guilty. He further confirmed that he understood the maximum penalty range; that he understood that he could not be promised a particular sentence; that his sentence was completely up to the Court; that he could be sentenced above or below the Guidelines range; that he was facing criminal felony charges; and that the facts contained in the plea agreement were all true. Petitioner also confirmed to the Court that he wished to plead guilty of his own free will, that he was guilty to what he was pleading, and that he understood he was waiving his right to a trial. *See, e.g.*, *United States v. Payton*, 260 F.3d 898, 900 (8th Cir. 2001) (rejecting an ineffective assistance of plea counsel claim based on counsel's alleged promise as to

11

sentencing where the defendant confirmed during the plea colloquy that he understood there were no such guarantees).

Moreover, Petitioner's claims are contradicted by his repeated representations to the Court during the plea-taking that he was satisfied with his counsel's representation, that there were no questions he had that his counsel had not answered, and that there was nothing he asked his counsel to do that counsel had not done. Thus, the Court will deny Petitioner's Claims 3, 5 and 6.

**Claim 4: Statute of Limitations**

In Claim 4, Petitioner asserts that the indictment was filed on August 27, 2014, and the earliest offense took place on January 1, 2009. Thus, Petitioner claims that the indictment fell beyond the "five-year statute of limitation[s]," and counsel should have filed a motion to this effect.

However, as Respondent correctly notes, 18 U.S.C. § 3299 provides that "an indictment may be found or an information instituted at any time without limitation for any offense under Section 1201 involving a minor victim, and for any felony under Chapter 109A, 110 (except for Section 2257 and 2257A), or 117, or Section 1591." 18 U.S.C. § 3299. The felonies in Chapters 109A, 110, and 117 include violations of 18 U.S.C. § 2252A, such as the violations charged in the indictment. Thus, the indictment was not barred by any statute of limitations, and such an argument would not have been successful. Claim 4 is without merit and will be denied.

**Claim 7: Petitioner's Wife's and Mother-in-Law's Medical Conditions**

Petitioner next complains that counsel was ineffective for failing to mention

12

Petitioner's wife's and mother-in-law's physical and mental health. Specifically, Petitioner asserts that "[t]he physical and mental health of [Petitioner's] wife and mother-in-law was understated in the PSR." ECF No. 1 at 10. He contends that this is significant because "the Court may have been inclined to give [Petitioner] a lighter sentence in order for him to be able to care for his wife and mother-in-law." *Id.*

Here, the record refutes Petitioner's claim in part. Petitioner's wife's medical conditions were set forth in the sentencing memorandum submitted by counsel, and the PSR set forth that Petitioner wife had a variety of mental health issues and medical problems. At the sentencing hearing, both Petitioner and his counsel presented arguments about Petitioner's need to care for his wife, including that Petitioner's wife was unable to function or live independently without him. Further, the Court acknowledged their concerns and stated that it had read Petitioner's wife's psychiatrist's letter documenting his wife's mental health issues. The Court expressly took these factors into consideration in sentencing Petitioner.

With regard to Petitioner's mother-in-law, the record contains no mention of her presence in Petitioner's life or her need for Petitioner's assistance. Significantly, Petitioner does not assert that he told counsel about his mother-in-law but counsel failed to raise the issue with the Court. Further, Petitioner does not claim to have told the Probation Office about his mother-in-law such that the information could be included in the PSR. Thus, there is no evidence that counsel was ever aware that Petitioner would be needed to assist his mother-in-law. Moreover, Petitioner had the opportunity to tell the Court about any issue with respect to his mother-in-law during his plea and sentencing

13

hearings, and he failed to raise the issue at that time.

In short, Petitioner has not shown that counsel acted unreasonably with respect to advising the Court of Petitioner's family responsibilities, or that the outcome of his criminal proceedings would have been different had more or different information been presented. Accordingly, Petitioner has not shown ineffective assistance, and Claim 7 will be denied.

**Claim 8: Guideline Enhancement for Distribution**

Petitioner's Claim 8 merely states: "Clarification of 'knowledge of distribution' is required under the new guidelines," and that Petitioner was unaware that files were being transferred from his computer. ECF No. 1 at 10. Although it is not at all clear what Petitioner is asserting in this claim, Respondent suggests that Petitioner may be referring to a sentencing guidelines enhancement under U.S.S.G. § 2G2.2(b)(3), which applies if the offense involves distribution. ECF No. 3 at 19. However, this enhancement was never applied in Petitioner's case, and Petitioner did not receive any adjustment to his offense level based on distribution. Further, Petitioner does not explain how his assertion gives rise to an ineffective assistance of counsel claim. Accordingly, Claim 8 will be denied.

**Claim 9: Fourth Amendment Violation**

Petitioner's Claim 9 is likewise conclusory and without merit. Petitioner claims that counsel was ineffective for failing to investigate a potential Fourth Amendment violation regarding Petitioner's consent to search his residence and computer. However, Petitioner has not explained how such an investigation would have affected Petitioner's

decision to plead guilty, so as to demonstrate prejudice under *Strickland*.

Moreover, this claim is contradicted by Petitioner's representations at his waiver-of-pretrial-motions and change-of plea hearings, that he understood his rights to assert such Fourth Amendment violations and that he was waiving such rights. Finally, as with other claims, this ineffective-assistance claim is contradicted by Petitioner's representations during the plea colloquy that he was satisfied with his counsel. Accordingly, Claim 9 will be denied.

**Evidentiary Hearing**

As noted above, an evidentiary hearing is not warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (holding that a district court may forego holding an evidentiary hearing before dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief") (citation omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Thomas Burch's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2019.